# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| RICKY J. YODER, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO.5:21-cv-00266 |
| JORDAN FOREST PRODUCTS, LLC, JOHN RIMMER, ROBBIE FINCH, MARCUS HART, and ROGER REED, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Ricky J. Yoder, by and through the undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants Jordan Forest Products, LLC, John Rimmer, Roger Reed, Marcus Hart, and Robbie Finch (*collectively*, "Defendants"), respectfully showing the Court as follows:

# I.  JURISDICTION AND VENUE

1.

Plaintiff Rickey J. Yoder brings the above-captioned case pursuant to (a) Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, for sexual harassment (hostile work environment) and retaliation and (b) the laws of the State of Georgia for assault, battery, defamation, intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

The United States District Court for the Middle District of Georgia ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claims arise from the same nucleus of operative facts as the Federal law claims.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants reside and/or maintain a place of business in the Middle District of Georgia, Macon Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Middle District of Georgia, Macon Division.

4.

Prior to commencing this matter, Plaintiff satisfied all administrative prerequisites to institute the above-captioned case. Specifically, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity ("EEOC") within one-hundred-and-eighty (180) calendar days from the day the discrimination took place (Charge No. 410-2021-01615) and Plaintiff has timely commenced the above-captioned case within ninety (90) days of receipt of the Notice of Right to Sue, dated May 17, 2021.

## II.  PARTIES

5.

Plaintiff Ricky J. Yoder ("Yoder" or "Plaintiff") is a twenty-four (24) year old Native-American male, who is a citizen of the United States, resident of the State of Georgia, Lamar County, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

6.

At all relevant times, Yoder was employed by Jordan Forest Products, LLC, within the meaning of, among other laws, the Title VII, 42 U.S.C. § 2000e(f).

7.

Defendant Jordan Forest Products, LLC, ("Jordan Forest") is a North Carolina limited liability company registered with the Georgia Secretary of State, Control Number 432661.

8.

Jordan Forest is a lumber and supply company that affects inter-State commerce through the operation of mills in several locations, including, but not limited to, the mill located in Barnesville, Georgia.

9.

Jordan Forest is subject to the Court's jurisdiction with a principle office located at 1939 N.C. Highway 109 S., P.O. Box 98, Mount Gilead, North Carolina 27306.

10.

Jordan Forest is an "employer" within the meaning of, among other laws, Title VII, 42 U.S.C. § 2000e(b), with more than fifty (50) employees for each working day in each of the fifty (50) or more calendar weeks in the current or preceding calendar year while engaging in inter-state commerce.

11.

Jordan Forest may be served with process through C T Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046-4805.

12.

Defendant John Rimmer ("Rimmer")—Caucasian male—was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

13.

Rimmer served, at all relevant times, as a Lead Millwright involved in the day-to-day operation of Jordan Forest's mill, and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Jordan Forest.

14.

Rimmer may be served at Jordan Forest located at 752 Grove Street, Barnesville, Georgia 30204.

15.

Defendant Roger Reed ("Reed")—Caucasian male—was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

16.

Reed served, at all relevant times, as a Manager involved in the day-to-day operation of Jordan Forest's mill, and regularly exercised authority to:  (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Jordan Forest.

17.

Reed may be served at Jordan Forest located at 752 Grove Street, Barnesville, Georgia 30204.

18.

Defendant Robbie Finch ("Finch")—Caucasian male—was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

19.

Finch served, at all relevant times, as a Manager involved in the day-to-day operation of Jordan Forest's mill, and regularly exercised authority to:  (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Jordan Forest.

20.

Finch may be served at Jordan Forest located at 752 Grove Street, Barnesville, Georgia 30204.

21.

Defendant Marcus Hart ("Hart")—Caucasian male—was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

22.

Hart was, at all relevant times, an employee of Jordan Forest.

23.

Hart may be served at Jordan Forest located at 752 Grove Street, Barnesville, Georgia 30204.

## III.  FACTUAL ALLEGATIONS

### 24.

Yoder re-alleges and incorporates each and every preceding Paragraph of the above-captioned complaint as if set forth fully herein.

### 25.

Jordan Forest provides, *inter alia*, is a lumber and supply provider from mills in several States, including, but not limited to, its mill located in Barnesville, Georgia ("Mill").

### 26.

Yoder is a twenty-four (24) year-old Native-American male.

### 27.

After completing high school, Yoder completed industrial maintenance and electrical technician training, as well as became a certified crane operator and welder.

### 28.

On or about February 24, 2020, Yoder became employed by Jordan Forest at the Mill as Millwright, responsible for repairing, installing, and replacing industrial machinery.

29.

Immediately upon the commencement of Yoder's employment, Rimmer and other Jordan Forest employees, began sexually harassing Yoder on a daily, continual, and regular basis.

30.

On almost a daily basis at the Mill, Rimmer subjected Yoder to unwelcomed sexual advances and comments.  For example, Rimmer repeatedly made humping gestures towards and near Yoder.  On multiple occasions, Rimmer instructed Yoder to "suck my dick" and or declared, "Eh, Yoder come over and suck my dick."

31.

Finch, Jordan Forest Manager, started a false rumor, which spread throughout the Mill, that Yoder performed oral sex on a male employee in the electrical control room.  For example, on a daily basis at the Mill, several Jordan Forest employees made "dick sucking" comments and accusations about Yoder.  Moreover, Jordan Forest employees physically grabbed Yoder and declared, "Hey, come on and suck my dick."

32.

Faced with the unyielded and unrelenting sexual advances, comments, and offers, Yoder eventually summoned the courage to complain about the unwelcome

sexual advances to Jordan Forest management.  In or about March 2020, Yoder complained to his direct supervisor, Rimmer, who would simply respond, "I don't give a fuck, you need to get thicker skin."  When Rimmer failed to take any remedial action, Yoder then complained to several members of Jordan Forest's management, including, but not limited to, Reed, Kevin Carpenter who suggested that Yoder "leave it be," and Chris Nipper ("Nipper") who stated that "no one would do anything."  Additionally, Nipper stated that Yoder would have to "suck it up" or "get thicker skin or you shouldn't be in this line of work."  Jordan Forest refused to address Yoder's complaints about sexual harassment or take any remedial actions.

33.

Rather than take remedial actions based upon Yoder's complaints about sexual harassment, Defendants engaged in a retaliatory campaign against Yoder. For example, immediately following Yoder's complaints, Jordan Forest employees continued, escalated, and increased the unwelcome sexual advances and comments. Indeed, the sexual advances and comments became increasing vulgar and frequent, such that Yoder avoided co-workers and restrooms, where the sexual advances and comments frequently occurred.  Moreover, Reed told Yoder that, if Yoder kept complaining and/or escalated the sexual harassment issues/complaints, Yoder's

employment would be terminated.  Defendants viewed Yoder's complaints as an annoyance.

34.

Faced with the intolerable hostile work environment, unwelcome sexual comments and advances, as well as public humiliation, Yoder was constructively discharged and forced to resign from Jordan Forest in or about June 2019.

35.

Following Yoder's constructive discharge and forced resignation, Reed approached Yoder a local grocery store, Ingles, where Reed convinced Yoder to return Jordan Forest with the promise that Yoder would not again face the same sexual harassment, assaults, batteries, infliction of emotional distress, and defamation Yoder previously experienced at the Mill.

36.

Yoder resumed his employment with Jordan Forest at the Mill in or about December 2019.  Despite Reed's promises, immediately upon returning to the Mill, Jordan Forest employees resumed making unwelcome sexual advances and comments directed to Yoder.  Moreover, Hart repeatedly threatened to attack and fight Yoder.  In fact, on at least one occasion in the presence of supervisors, team leads, and Rimmer, Hart physically assaulted Yoder with a wrench.  Rather than take

any remedial action, Rimmer simply instructed Yoder and Hart to HR.  Although HR promised to separate Yoder and Hart in the workplace, HR never relocated Hart or Yoder.  Emboldened by HR's refusal to take any remedial action, Yoder was again subjected to continued, escalated, and increased unwelcome sexual advances, comments, and assaults.

37.

Faced with the intolerable hostile work environment, unwelcome sexual comments and advances, as well as public humiliation, Yoder was again constructively discharged and forced to resign from Jordan Forest on December 26, 2020.

38.

Prior to the constructive terminations and/or forced resignations and despite being sexually harassed, assaulted, battered, and defamed, Yoder diligently performed professional duties at the Mill.

39.

Defendants' conduct caused Yoder to feel anxious, dejected, humiliated, violated, victimized, traumatized, and disrespected.

40.

At all relevant times, Defendants had actual and constructive notice and knowledge of the repeated, ongoing, and constant sexual harassment directed to Yoder at the Mill, however, Defendants failed to take any remedial action to address Yoder's complaints and concerns, but rather, continued to subject Yoder to unwelcome sexual advances and comments while threatening to terminate Yoder's employment if he continued to complain.

## IV.  CLAIMS FOR RELIEF

### COUNT I
### SEXUAL HARASSMENT
### HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF TITLE VII
### (Against Defendant Jordan Forest)

41.

Yoder re-alleges and incorporates each and every preceding Paragraph of the Complaint as if set forth fully herein.

42.

Title VII prohibits employers from discriminating against an employee based upon sex/gender, including sexual harassment in the form of unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature with the purpose or effect of unreasonably interfering with an employee's performance or creating an intimidating, hostile, and/or offensive work environment.

43.

Defendants violated Title VII, such that a cause of action exists where discrimination on the basis of gender/sex was the causative agent of adverse actions directed at Yoder by Defendants.

44.

Yoder, as a twenty-four (24) year old Native-American male, is a member of a protected group under Title VII.

45.

From on or about February until December 2020, an employer-employee relationship existed between Yoder and Jordan Forest, such that Yoder was an "employee" and Jordan Forest was an "employer" within the meaning Title VII.

46.

At all times relevant to this action, Jordan Forest acted by and through its agents and employees, including, but not limited to, Rimmer and Reed, each of whom acted in the course and scope of their employment with and for Jordan Forest.

47.

While employed by Jordan Forest, Yoder was forced to endure, because of her gender/sex, a hostile work environment, sexual assault, and sexual battery, where Yoder was subjected to adverse employment action(s) while forced to endure inflammatory remarks, harassment, intimidation, humiliation without any legitimate basis, as well as constant unwelcome sexual comments and advances without any legitimate basis.

48.

During the course of Yoder's employment, Rimmer, Finch, and several Jordan Forest employees repeatedly subjected Yoder to unwelcome sexual comments and advances, including, but not limited to, repeatedly making humping (sexual) gestures toward Yoder, requesting that Yoder perform oral sex, making sexual jokes about Yoder, physically grabbing Yoder, as well as making other unwelcome sexual advances and comments towards Yoder.

49.

The almost daily unwelcome sexual comments and advances by Jordan Forest employees towards Yoder were severe and pervasive, materially affecting the terms and conditions of Yoder's employment.

50.

When Yoder refused to comply with, and reported, the constant, unwelcome sexual comments and advances, Rimmer and other Jordan Forest employees aggressively escalated the sexual harassment, assaults, and batteries while Defendants subjected Yoder to tangible employment actions, including, but not limited to, threatened termination of employment, constructive termination of employment, and/or forced resignation from employment.

51.

The discrimination to which Yoder was subjected to by Defendants was based upon gender/sex in violation of Title VII and, thus, Yoder is entitled to all appropriate relief provided under the law.

52.

Defendants' actions constituted discrimination and disparate, adverse treatment based upon gender/sex such that the intentional actions by Defendants adversely impacted Yoder's terms, conditions, and privileges of employment.

53.

Defendants' actions created a hostile work environment based upon gender/sex such that the intentional actions by Defendants adversely impacted Yoder's terms, conditions, and privileges of employment.

54.

Defendants' discriminatory conduct was accomplished pursuant to an unofficial policy, practice, and/or custom of Defendants.

55.

As a direct and proximate result of Defendants' intentional and unlawful conduct, which was intended to cause Yoder harm and/or was committed with reckless disregard of the harm caused to Yoder, in derogation of Yoder's Federally-protected rights, Yoder suffered and continue to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to their reputation, and other pecuniary loses.

56.

Defendants' intentional and illegal conduct entitles Yoder to compensatory damages, as well as any and all other remedies available under Title VII.

57.

Defendants' actions with regard to Yoder demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care and, therefore, Yoder is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT II:
## RETALIATION
## IN VIOLATION OF TITLE VII
### (Against Defendant Jordan Forest)

58.

Yoder re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

59.

Title VII prohibits employers from retaliating against an employee who opposes an employment practice prohibited by, or exercise or attempt to exercise rights under, Title VII.

60.

Yoder is a twenty-four (24) year old Native-American male and member of a protected group under Title VII.

61.

During the relevant period, the relationship between Yoder and Jordan Forest was an employer-employee relationship within the meaning of Title VII, such that a cause of action exists where retaliation on the basis of opposing and/or reporting discrimination is alleged to be the causative agent of adverse employment action(s) directed to Yoder by Defendants.

62.

During the course of Yoder's employment, Defendants unlawfully and knowingly discriminated against Yoder based upon, among other things, gender/sex in violation of, *inter alia*, Title VII.

63.

Yoder repeatedly complained to Rimmer, Reed, and Defendants' management about unlawful employment practices based upon gender/sex and sexual harassment in violation of Title VII.

64.

Immediately following Yoder's complaints concerning, among other things, unlawful employment practices and sexual harassment, Reed threatened to terminate Yoder's employment, the unwelcome sexual advances and comments escalated, and Yoder was constructively discharged and/or forced to resign from Jordan Forest in violation of, *inter alia*, Title VII.

65.

The effect of Defendants' actions has been to suspend and deprive Yoder of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits due Yoder because of the exercise of Yoder's Federally-protected rights.

66.

Defendants' adverse employment action(s) against Yoder constitute unlawful retaliation against Yoder in violation of, *inter alia*, Title VII.

67.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Yoder's harm and/or were committed with reckless and wanton disregard of the harm causes to Yoder in derogation of Yoder's Federally-protected rights.

68.

Defendants' discriminatory and retaliatory actions were undertaken in bad-faith.

69.

The retaliation to which Yoder was subjected by Defendants entitles Yoder to all appropriate relief afforded under the law.

70.

As a result of Defendants' intentional and unlawful actions, Yoder has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to her reputation, other indignities, as well as past and future pecuniary losses.

71.

Defendants' actions with respect to Yoder have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and thus, Yoder is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNTS III AND IV:
## ASSAULT AND BATTERY
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Against Defendants Jordan Forest, Rimmer, and Hart)

72.

Yoder re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

73.

Georgia law prohibits, among other things, intentional conduct causing physical harm to another person.

74.

Additionally, Georgia law prohibits, among other things, attempted batteries and/or conduct that places another person in reasonable apprehension of an immediate violent injury.

75.

At all relevant times, Rimmer, Hart, and Yoder were employed by Jordan Forest.

76.

During the course of employment, Yoder was required, as a Millwright to work under the instruction and direct supervision of Rimmer and Managers at the Mill.

77.

Despite Yoder's repeated objections, opposition, reports, and complaints, Rimmer repeatedly made unwelcome sexual comments and advances, including, but not limited to, making humping sexual gestures toward Yoder, instructing Yoder to perform oral sex on Rimmer, physically grabbing Yoder while requesting oral sex, as well as making other unwelcome sexual advances and remarks directed toward Yoder.

78.

In addition to Rimmer's repeated physical sexual contact and requests for sexual favors, Hart repeatedly threatened to fight and attack Yoder before physically assaulting Yoder with wrench.

79.

Repeated physical attacks and assaults, which were willful, intentional, and directed towards Yoder by Rimmer, Hart, and other Jordan Forest employees for reasons personal to those individuals, proceeded from anger, rudeness, and/or lust.

80.

When Yoder refused to comply with, and reported, the constant, unwelcome sexual comments and advances, Defendants began to subject Yoder to retaliatory adverse employment actions.

81.

Although Yoder repeatedly complained to Defendants' management concerning the unwelcome sexual advances and remarks, as well as threatening conduct, Defendants failed to take any remedial action.

82.

As a direct result of the repeated offensive comments, sexist remarks, forceful physical contact and assaults, as well as increasingly aggressive sexual actions by Rimmer, Hart, and Jordan Forest employees, Yoder reasonably apprehended a violent injury and/or battery.

83.

All apparent circumstances, reasonably viewed, were such as to lead a person to reasonably apprehend a violent injury and/or battery from the unlawful conduct of Rimmer, Hart, and other Jordan Forest employees.

84.

Rimmer, Hart, and the other Jordan Forest employees were not privileged, authorized, or justified when repeatedly touching and threatening Yoder in a sexual manner.

85.

When repeatedly assaulting Yoder, Rimmer, Hart, and other Jordan Forest employees were performing within the scope of their employment with Jordan Forest.

86.

As the direct and proximate result of Defendants' intentional, willful, unlawful, and tortious conduct, Yoder has suffered, among other things, fear, humiliation, embarrassment, mental anguish, physical injuries, and damages in an amount to be determined at trial.

87.

Defendants' tortious actions and conduct were undertaken in bad-faith.

88.

The assaults and batteries to which Yoder was subjected by Defendants entitles Yoder to all appropriate relief afforded under the law.

89.

Defendants' actions with respect to Yoder have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and thus, Yoder is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT V:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
**(Against Defendants Jordan Forest, Rimmer, Reed, Hart, and Finch)**

90.

Yoder re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

91.

Defendants' statements, conduct, and behavior towards Yoder were intentional and reckless, extreme and outrageous, causing Yoder severe shame, humiliation, embarrassment, and emotional distress of a nature that no person should endure.

92.

Defendants' statements, conduct, and behavior towards Yoder demonstrate, among other things, a "retaliatory animus."

93.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Yoder, as well as Yoder's income and/or livelihood during a Global Pandemic.

94.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Yoder, Defendants knew that Yoder was dependent upon the income received from with employment with Jordan Forest.

95.

Rimmer, Finch, and other Jordan Forest employees repeatedly subjected Yoder to unwelcome sexual comments and advances, including, but not limited to, sexual humping gestures, instructions to perform oral sex, false rumors about Yoder's sexual conduct, physical grabbing, as well as other unwelcome sexual advances and remarks.

96.

Rimmer, Hart, and other Jordan Forest employees repeatedly subjected Yoder to physical assaults and batteries, including, but not limited to, Hart's attacks and physical assaults with a wrench, as well as Rimmer's physical grabbing while requesting sexual favors.

97.

When Yoder complained about the unwelcome sexual advances and comments, assaults, and batteries, Reed threatened to terminate Yoder's employment.

98.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Yoder.

99.

As a result of Defendants' conduct, Yoder has and will continue to suffer severe emotional distress and other damages for Yoder is entitled to recover.

**COUNT VI**
**DEFAMATION**
**IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA**
**(Against Defendants Jordan Forest and Finch)**

100.

Yoder re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

101.

Following Rimmer's unwelcome sexual advances and comments toward Yoder, Finch published and stated to other Jordan Forest employees that Yoder was performing oral sex on other male Jordan Forest employees at the Mill.

102.

Finch knowingly and maliciously spread false rumors about Yoder performing oral sex on male Jordan Forest employees at the Mill to impugn Yoder's personal and professional character in violation of Georgia law.

103.

When falsely and maliciously stating that Yoder was performing oral sex on other male Jordan Forest employees at the Mill, Finch was acting within the scope of his employment with Jordan Forest.

104.

Finch's false and malicious statements concerning Yoder performing oral sex on other male Jordan Forest employees at the Mill were intended to injure the reputation of Yoder while exposing Yoder to public hate, contempt, and ridicule, and resulted in constructive termination of employment and/or forced resignation of employment with Jordan Forest.

105.

Finch's false and malicious statements about Yoder performing oral sex on other male Jordan Forest employees at the Mill, which were directly related to Yoder's trade and profession, were also calculated to injure Yoder's trade, profession, and ability to earn a living.

106.

Although Finch's false and malicious statements about Yoder performing oral sex on other male Jordan Forest employees at the Mill were not privileged, to the extent any privilege existed, the privilege was merely a cloak for venting private malice toward Yoder and not *bona fide* in promoting the object for which any privilege was granted.

107.

As a direct and proximate result of Finch's false and malicious statements about Yoder performing oral sex on other male Jordan Forest employees at the Mill, Yoder has suffered and continues to suffer damages in the form emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to reputation, litigation expenses, and other pecuniary losses.

108.

Defendants' actions with respect to Yoder have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and thus, Yoder is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT VII
## NEGLIGENT RETENTION AND SUPERVISION
## IN VIOLATION OF GEORGIA LAW
### (Against Defendant Jordan Forest)

109.

Yoder re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

110.

As a result of the actions taken by Defendants, Yoder suffered, among other things, assaults, batters, defamation, discrimination based gender/race, and retaliation.

111.

Defendants owed Yoder a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory, retaliatory, and/or tortious conduct.

112.

By negligently retaining and supervising its employees, including, but not limited to, Rimmer, Finch, Hart and Reed, Jordan Forest breached the duty to hire, retain, and supervise employees who would lawfully behave.

113.

Jordan Forest knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, to engage in unlawful conduct against Yoder, who repeatedly complained about and reported Rimmer's, Finch's, Hart's and Reed's tortious and unlawful conduct to Jordan Forest.

114.

By failing to engage in any corrective or remedial action, Jordan Forest ratified, condoned, and/or adopted its employees' unlawful conduct.

115.

As a direct and proximate result of Jordan Forest's negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by employees, including, but not limited to, Rimmer, Reed, Hart, and Finch, Yoder suffered damages.

116.

Jordan Forest's negligent conduct entitles Yoder to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully demand a trial by jury and request the following relief:

(a)     That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)     That the Court grant declaratory judgment that Plaintiff's rights under, among other laws, Title VII and the State of Georgia were violated;

(c)     That the Court award Plaintiff compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)     That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)     That the Court award liquidated damages equal to back pay and lost benefits based upon Defendants' willful violations of, *inter alia*, Title VII;

(g)    That the Court award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such future conduct;

(h)    That the Court award pre-judgment interest on any monetary award;

(i)    That the Court grant a trial by jury as to all triable issues of fact; and

(j)    Further and additional relief as may be just and appropriate.

Respectfully submitted, this 28th day of July, 2021.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*
REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff Ricky J. Yoder*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| RICKY J. YODER, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. 5:21-cv-00266 |
| JORDAN FOREST PRODUCTS, LLC, JOHN RIMMER, ROBBIE FINCH, and ROGER REED, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 28th day of July, 2021.

MOLDEN & ASSOCIATES

T. ORLANDO PEARSON
Georgia Bar No. 180406